# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| WOODBRIDGE GROUP OF COMPANIES, LLC; WOODBRIDGE STRUCTURED FUNDING, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERT D. KLAGER; PROVIDENCE TRUST GROUP, LLC FBO ALBERT D. KLAGER ROTH IRA; ATLANTIC INSURANCE & FINANCIAL SERVICES INC.,<br><br>Defendants. | Adversary Proceeding<br>Case No. 18- 50812 (KJC)<br><br>**Hearing Date:**<br>**April 2, 2019, at 10:00 a.m. (ET)**<br><br>**Objection Date:**<br>**February 26, 2019, at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, AUTHORIZING AND APPROVING ENTRY INTO A SETTLEMENT WITH ALBERT D. KLAGER AND <u>ATLANTIC INSURANCE & FINANCIAL SERVICES, INC.</u>**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Chapter 11 Cases</u>") hereby move the Court (this "<u>Motion</u>") for the entry of an order, substantially in the form attached

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

01:24164922.1

hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing and approving the Debtors to enter into that certain *Settlement Agreement* dated as of February 5, 2019 (the "Settlement Agreement"), in the form attached as **Exhibit 1** to the Proposed Order, with Albert D. Klager ("Klager") and Atlantic Insurance & Financial Services, Inc. ("Atlantic" and, together with Klager, the "Klager Parties"), settling a dispute in connection with three proofs of claim filed by the Klager Parties and the Debtors' causes of action against the Klager Parties, and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

2.  On December 4, 2017, a total of 279 Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Thereafter, on February 9, 2018, March 9, 2018, March 23,

01:24164922.1

2

2018, and March 27, 2018, additional affiliated Debtors (27 in total) commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Petition Dates"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No trustee has been appointed in the Chapter 11 Cases. An official committee of unsecured creditors (the "Committee") was appointed on December 14, 2017 [Docket No. 79]. On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [Docket No. 357].

4. On August 22, 2018, the Debtors filed the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors* [Docket No. 2397] (as it may be amended, supplemented, or modified from time to time pursuant to the terms thereof, the "Plan"). On October 26, 2018, the Court entered an order confirming the Plan [Docket No. 2903].

## THE PARTIES' RELATIONSHIP AND DISPUTES

5. Prior to the Petition Dates, Klager was an external broker (*i.e.*, not an employee of the Debtors) who marketed Notes and/or Units (each as defined in the Plan) to investors. Klager alleges that, pursuant to an agreement with the Debtors, he and/or Atlantic were entitled to receive commission payments or other compensation from the Debtors based on the dollar amount of Notes and/or Units sold. According to the Debtors' records, the Klager Parties received commission payments or other compensation from the Debtors in the aggregate amount of $1,534,854.49 (the "Transfers") during the four years prior to the applicable Petition Dates.

6. The Klager Parties filed the following claims (collectively, the "Claims") against the Debtors:

   a. Atlantic filed Claim No. 9190 (the "Commission Claim") for $20,686.70. Atlantic asserts that the full amount of the Commission Claim is entitled to priority under Bankruptcy Code section 507(a)(4).

   b. Klager filed Claim No. 8737 for $26,457.87. Claim No. 8737 is based on Notes (as defined in the Plan) held by Klager. Klager asserts that Claim No. 8737 is a fully secured claim.

   c. Klager filed Claim No. 8739 for $50,458.34. Claim No. 8739 is based on Units (as defined in the Plan) held by Klager.

7. On September 14, 2018, certain of the Debtors filed the *Complaint Objecting to Claims and Counterclaiming for Avoidance and Recovery of Avoidable Transfers and for Equitable Subordination* (Adv. Case No. 18-50812 (KJC)) (the "Adversary Proceeding"), pursuant to which the Debtors seek to disallow or subordinate the Claims and avoid and recover the prepetition Transfers.

## SUMMARY OF THE SETTLEMENT AGREEMENT[2]

8. The Settlement Agreement provides that the Claims shall be disallowed in their entirety and the Klager Parties shall have no right to any distribution or recovery in the Chapter 11 Cases. *See* Settlement Agreement ¶ 3. The Settlement Agreement further provides that Klager shall pay the Debtors cash in the amount of $17,500.00 (the "Settlement Payment"), payable in installments over a period of thirteen (13) months. *Id.* at ¶ 4. Subject to receipt of the Settlement Payment, the parties will exchange mutual releases, including a release by the Debtors of claims relating to or arising from the Transfers, and excluding any claims to enforce the parties' respective rights under the Settlement Agreement. *Id.* ¶¶ 10-11. Promptly upon

---

[2] In the event of a conflict between any term addressed in this summary with any term in the Settlement Agreement, the Settlement Agreement will govern in all respects.

01:24164922.1

4

receipt of the first Monthly Installment (as defined in the Settlement Agreement), the Debtors shall cause the Adversary Proceeding to be dismissed without prejudice. *Id.* ¶ 6.

9. Klager has executed a declaration (the "Declaration"), a copy of which is attached as Exhibit 1 to the Settlement Agreement), regarding, *inter alia*, his financial condition. As shown in the Declaration, Klager's net assets are relatively minimal; Klager further asserts that a substantial portion of his net assets are exempt. The Debtors have relied on the completeness and accuracy of the Declaration in entering into the Settlement Agreement, and shall have the rights and remedies set forth therein against the Klager Parties in the event of any material inaccuracies or omissions in the Declaration, including the right to compel surrender of any omitted asset of a value in excess of the thresholds set forth in Paragraph 6 of the Settlement Agreement. *Id.* ¶¶ 8-9.

10. The Settlement Agreement will not be effective until it has been approved by the Court and certain other standard conditions to its effectiveness have occurred. *See id.* ¶ 7.

## RELIEF REQUESTED

11. By this Motion, the Debtors request the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), authorizing and approving the Settlement Agreement, and granting related relief.

## BASIS FOR RELIEF

12. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANK. P. 9019(a).

13. "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy). The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, in order to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re Pa. Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

14. The decision whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). In exercising that discretion, the Third Circuit Court of Appeals has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The proponent of a settlement is

01:24164922.1

6

not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *In re World Health*, 344 B.R. at 296 (internal citations and quotation marks omitted); *see also, e.g.*, *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) ("[I]n assessing the fairness of the settlement, a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

15. The Debtors have determined, in an exercise of the Debtors' sound business judgment, that the terms of the Settlement Agreement are fair and reasonable and that the best interests of the Debtors' estates and creditors will be served by the entry of the Proposed Order. The terms of the Settlement Agreement are the product of good faith, arm's-length negotiations among the Debtors and the Klager Parties, and fall well within the reasonable range of litigation possibilities.

16. The Settlement Agreement, if approved, will result in disallowance of the Claims and the payment of the Settlement Payment to the Debtors' estates. This resolution eliminates the need for the Debtors to litigate the Adversary Proceeding seeking to, *inter alia*, disallow the Claims and recover the Transfers, which would entail substantial time and attorneys' fees, without any guarantee of success. In light of information that Klager has provided regarding his financial condition and ability to satisfy a judgment against him, avoiding litigation is sensible.

17. Further, resolution of the Claims eliminates the need to establish a disputed claim reserve in respect of the Claims that would reduce (at least temporarily) distributions to other creditors. Such an outcome not only is favorable for the Debtors' estates and creditors, but also

advances the longstanding federal policy that bankruptcy cases should be promptly administered for the benefit of creditors who will get only partial recoveries on their claims.[3]

18.     In sum, all of the *Martin* factors support approval of the proposed settlement.  The Settlement Agreement reflects the Debtors' likely ability to succeed on the merits in litigation while acknowledging the risks and uncertainties that are inherent in any legal dispute.  The Settlement Agreement achieves the objective of disallowing the Claims while eliminating the administrative expense, inconvenience, and delay necessarily attendant to prosecuting the Adversary Proceeding to object to the Claims and seek recovery of the Transfers.  The Settlement Agreement also advances the paramount interests of creditors by timely resolving disputed claims and working to fix the amount of the allowed claims pool in a fashion that will enhance the speed and amount of distributions that can be paid to the holders of allowed general unsecured claims.

19.     For all these reasons, the Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the estates and should therefore be approved under Bankruptcy Rule 9019 and Bankruptcy Code section 105(a).

## REQUEST FOR WAIVER OF STAY

20.     The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease

---

[3]     *See, e.g.*, *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694 (2015) ("[E]xpedition is always an important consideration in bankruptcy."); *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) (describing longstanding recognition "that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period'" (quoting *Ex parte Christy*, 44 U.S. (3 How.) 292, 312 (1845))); *Wiswall v. Campbell*, 93 U.S. (3 Otto) 347, 350-51 (1876) (emphasizing how "[p]rompt action is everywhere required by law," and that this principle requires quick resolutions of claims against a bankruptcy estate, as "[w]ithout it there can be no dividend"); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 346-47 (1875) (discussing how "[i]t is obviously one of the purposes of the Bankrupt law, that there should be a speedy disposition of the bankrupt's assets," which is a goal "only second in importance to securing equality of distribution"); *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992) (noting "the important policy favoring efficient bankruptcy administration"); *Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 98 (3d Cir. 1988) (highlighting how "issues central to the progress of the bankruptcy petition, those likely to affect the distribution of the debtor's assets, or the relationship among the creditors, should be resolved quickly" (citation and quotation marks omitted)).

01:24164922.1

of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). The Debtors respectfully submit that a waiver of such stay is appropriate here because any delay in consummating the settlement could jeopardize the consensus reached between the parties and therefore would be detrimental to the Debtors, their creditors, and their estates.

## NOTICE

21.     The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the DIP lender; (iii) counsel for the Committee; (iv) counsel for the Noteholder Group; (v) counsel for the Unitholder Group; (vi) the Klager Parties; and (vii) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order granting the relief requested herein and (ii) grant such other and further relief as may be just and proper under the circumstances.

| | |
|---|---|
| Dated: February 12, 2019<br>Wilmington, Delaware | */s/ Betsy L. Feldman*<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Sean M. Beach (No. 4070)<br>Edmon L. Morton (No. 3856)<br>Ian J. Bambrick (No. 5455)<br>Betsy L. Feldman (No. 6410)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Tel: (302) 571-6600<br>Fax: (302) 571-1253<br><br>-and-<br><br>KLEE, TUCHIN, BOGDANOFF & STERN LLP<br>Kenneth N. Klee (*pro hac vice*)<br>Michael L. Tuchin (*pro hac vice*)<br>David A. Fidler (*pro hac vice*)<br>Jonathan M. Weiss (*pro hac vice*)<br>1999 Avenue of the Stars<br>39th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br><br>*Counsel for the Debtors and Debtors in Possession* |